# CANALES PLLC

November 8, 2019

**VIA ECF**
The Honorable Chief Judge Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 4A S
Brooklyn, NY 11201

          Re:    *Scripts Wholesale, Inc. and Lieb Pharmacy Inc. v. Mainspring Distribution LLC and Edvin Ovasapyan*, **Case No. 18-cv-06612**

Dear Chief Judge Irizarry:

    My firm, Canales PLLC, together with the law firm of Moses & Singer LLP, is counsel to the Defendants Mainspring Distribution LLC ("Mainspring") and Edvin Ovasapyan ("Mr. Ovasapyan") in the above-referenced matter. Pursuant to Section IV A. of Your Honor's Individual Motion Practice and Rules we write to respectfully request a pre-motion conference concerning the Defendants' anticipated motion for partial summary judgment.

    This is an action between sophisticated individuals and entities involved in the chain of distribution of millions of dollars of wholesale pharmaceutical drugs. It is undisputed that beginning in 2017, Steven Diamantstein, the principal of the Plaintiff, Scripts Wholesale Inc. ("Scripts") and the son of the Plaintiff Lieb Pharmacy, Inc.'s ("Lieb") principal, Raoul Diamantstein, began purchasing, wholesale, pharmaceutical drugs from Mainspring. The funds used to purchase the drugs apparently came from credit cards belonging to Scripts. During the course of the arms-length business relationship between the parties, Lieb received at least $56 million worth of drugs that Steven Diamantstein had ordered from Mainspring without issue. Upon information, Steven Diamantstein, Lieb and/or Scripts made millions of dollars in connection with their resale of the drugs they received from Mainspring. There is no writing memorializing the parties' business relationship.

    On November 8, 2018, Mr. Ovasapyan was arrested and named in a five-count criminal Indictment that was returned by a federal grand jury in the Northern District of California. On the same day, the government raided Mainspring's Pennsylvania-based offices, seized key records and assets, and froze multiple bank accounts associated with the Mainspring Defendants[1].

---

[1] On January 18, 2019 Magistrate Judge James Orenstein heard and denied a motion by the Defendants to stay this action during the pendency of Ovasapyan's criminal matter. In denying the motion, Judge Orenstein found that "[t]here [was] little if any overlap between the dispute in this case and the criminal charges now pending against defendant Ovasapyan" *See* Civil Conference Minute Order dated 1/18/2019, Docket Entry # 12. On September 5, 2019, the Indictment was superseded to allege a much larger fraud than initially pled. Indeed, the allegations and defenses in this Complaint now overlap entirely with the allegations in the superseding indictment. The Defendants

7 PENN PLAZA, SUITE 914, NEW YORK, NEW YORK 10001
T (212) 988-2039 E jason@canalespllc.com U www.canalespllc.com

As a result, Mainspring was forced to cease all business operations, and Scripts claims that it did not receive $4,828,062 worth of the drugs it had purportedly paid for.[2]

On November 19, 2018, Scripts commenced the instant lawsuit alleging breach of contract, unjust enrichment, money had and received, breach of fiduciary duty, and conversion, (ECF No. 1). On May 3, 2019, Scripts filed an Amended Complaint (ECF No. 29), adding Lieb as a Plaintiff and a cause of action under New York's Fraudulent Conveyances Act, New York Debtor & Credit Law Art. 10 §§ 270 et seq. On May 16, 2019, Mainspring and Ovasapyan filed Answers to the Amended Complaint (ECF Nos. 32 & 33), alleging affirmative defenses including illegality, unclean hands, and *in pari delicto*.

The Defendants anticipate moving for partial summary judgment dismissing Plaintiffs' claims against them for breach of fiduciary duty, conversion, unjust enrichment and fraudulent conveyances. First, Plaintiffs' claim for breach of fiduciary duty fails since there existed no fiduciary relationship between the Plaintiffs, on the one hand, and either of the Defendants, on the other. The Defendants' motion will show that the undisputed facts are that the Plaintiffs, sophisticated entities, and Defendant Mainspring had nothing more than an arms-length purchaser-supplier relationship. There was no agreement between the parties stating otherwise or other special relationship of trust or confidence. *Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, Summary Order,722 F. App'x 12, 15 (2d Cir. 2018) ("[w]hen parties deal at arm[']s length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances."), quoting *In Re Mid-Island Hosp., Inc.*, 276 F.3d 123,130 (2d Cir. 2002).

Second, summary judgment should be granted on Plaintiffs' conversion claim. A conversion action requires a "specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Bascunan v. Elsaca*, 874 F.3d 806, 821 n.56 (2d Cir. 2017) (internal citation omitted). The Defendants' motion will show that during the parties' business relationship, Scripts, through various credit card transactions transferred funds to Mainspring. Those funds were deposited in Mainspring's general Bank of America business account. As Mainspring's bank records indicate, those funds were commingled with funds belonging to Mainspring, and deposited by other customers of Mainspring, in an operating account that was used to run Mainspring's day-to-day business

---

have been severely prejudiced by their inability to fully defend this action during the pendency of the criminal proceeding. Notwithstanding, the Defendants have complied with all their discovery obligations to the best of their ability and without delay. Should the Plaintiffs move for summary judgment, however, the Defendants may again seek to stay this action until the criminal proceeding is completed. This is because the Defendants' ability to put in an affidavit opposing summary judgment may be significantly impeded by the pending criminal case against Ovasapyan, whom the Plaintiffs chose not to depose in this case. In the alternative, the Defendants will respectfully request that Your Honor set an extended briefing scheduled on any summary judgment motion filed by the Plaintiffs that takes Ovasapyan's pending criminal case into account. *Securities and Exchange Commission v. CKB168 Holdings, Ltd.*, 2016 U.S. Dist. Lexis 2359, *16 (E.D.N.Y, Jan. 6, 2016), J. Mauskopf; 2016 WL 11472222, *5 (denying application for stay pending a criminal proceeding but adjusting summary judgment briefing schedule pursuant to the Court's inherent power to manage its docket.).

[2] Upon information and belief, the Plaintiffs in fact received a portion of the drugs they claim they did not receive. Thus, to the extent any damages are owed, the Defendants intend to argue that they should be reduced accordingly.

affairs. Thus, because there is no evidence that Plaintiffs' funds were held in a segregated account, Plaintiffs' conversion claim must be dismissed. *Massive Paper Mills v. TwoTen Corp.*, 669 F.Supp. 94 (S.D.N.Y 1987) (finding that the Plaintiff's reliance on proof of monies paid into a general corporate account is insufficient to meet the "specifically identifiable" standard of actions for conversion of money.) Separately, because the Plaintiffs' conversion claim is just another way of recovering for Mainspring's alleged breach of contract, the claim must be dismissed. *Citadel Management, Inc. v. Telesis Trust, Inc.*, 123 F.Supp.2d 1333 (2000) ("[A]n action for conversion cannot lie where damages are merely sought for breach of contract.").

Third, because Mainspring does not dispute the existence of an arrangement between it and Steven Diamantstein, the unjust enrichment claim should be dismissed as duplicative of the claim for breach of contract. *Mueller v. Michael Janssen Gallery Pte Ltd.*, 225 F.Supp.3d 201, 207 (S.D.N.Y 2016) ("Numerous decisions applying New York law have held that an unjust enrichment claim is barred if there is a valid contract governing the subject matter of the dispute, even if one of the parties to the claim is not a party to that contract") (internal citations omitted).

Finally, the Defendants intend on moving for summary judgment on Plaintiffs' claim purporting to allege "fraudulent conveyances" on the ground that the Plaintiffs have failed to state a claim upon which relief may be granted. Plaintiffs have failed to specify what sections of the New York Debtor & Creditor Law (the "DCL") they are alleging the Defendants have violated. If the Plaintiffs are alleging violations of either DCL § 273 or §276, the Amended Complaint does not specify when or how any alleged fraudulent conveyances were made. Instead, the Amended Complaint merely asserts, in conclusory terms, that the Defendants fraudulently conveyed $4,828.062.[3] That is insufficient to state a claim under the DCL and therefore, the fraudulent conveyances claim should be dismissed. *Syllman v. Calleo Dev. Corp.*, 290 A.D.2d 209, 210-11 (1st Dep't 2002) ("Plaintiff does not identify any particular transaction that he seeks to avoid; nor does he identify any transaction alleged to be fraudulent, merely alleging that, by reason of certain unspecified transfers, he has been damaged in the amount of $1,000,000"); *Grand v. Trujillo*, 2019 WL 367983 (S.D.N.Y Jan. 30, 2019) (Engelmayer, J.) ("A claim of actual fraudulent conveyance must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b)"); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Separately, "it is not clear that the alleged 'fraud' is any more than a restatement of plaintiff's claim for contract damages." *Syllman*, 290 A.D.2d at 211 (1st Dep't 2002).

We respectfully request a pre-motion conference to discuss the Defendants' anticipated motion for summary judgment and the matters referenced herein. Thank you for your time and consideration.

Respectfully submitted,

Jason Canales

cc:   All Counsel of Record (via ECF)

---

[3] ¶17 of the Amended Complaint makes the threadbare assertion that "upon information and belief" Ovasapyan "commingled" the funds with "his personal assets." Similarly (and seemingly inconsistent), ¶19 states Ovasapyan caused the funds to be transferred to unidentified entities and persons over which he exercised control.