UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
SCRIPTS WHOLESALE, INC. and LIEB :
PHARMACY, INC., :
 :
                              Plaintiffs, : **MEMORANDUM AND ORDER**
 : 18-cv-6612 (DLI)(JRC)
                 -against- :
 :
MAINSPRING DISTRIBUTION LLC and EDVIN :
OVASAPYAN, :
 :
                             Defendants. :
 :
------------------------------------------------------------------ x
**DORA L. IRIZARRY, United States District Judge:**

      Plaintiffs Scripts Wholesale, Inc. and Lieb Pharmacy, Inc. (together, "Plaintiffs") bring this federal diversity action against Defendants Mainspring Distribution LLC ("Mainspring") and Edvin Ovasapyan ("Edvin") (together, "Defendants") alleging various state law claims including breach of contract, unjust enrichment, breach of fiduciary duty, conversion, and fraudulent conveyances pursuant to New York Debtor and Creditor Law, § 270 *et seq*. Amended Complaint ("Am. Compl.") at ¶¶ 21-54, Dkt. Entry No. 29. After the close of discovery, the Court *sua sponte* raised concerns that it lacked subject matter jurisdiction due to a potential lack of diversity among the parties. *See*, Electronic Order dated June 19, 2020. The Court then ordered briefing on the matter. *See*, Electronic Order dated March 3, 2021.

      Plaintiffs filed their brief in support of diversity jurisdiction. *See*, Pls.' Mem. of Law in Supp. of Subject Matter Jurisdiction ("Pls.' Br."), Dkt. Entry No. 65. Defendants filed their brief opposing diversity jurisdiction. Defs.' Mem. of Law in Support of Dismissal ("Defs.' Br."), Dkt. Entry No. 66. For the reasons set forth below, the Court finds that, while there is diversity between Plaintiffs and Defendant Mainspring, Edvin's citizenship has not been established. Accordingly,

1

as there is no complete diversity among the parties, this Court lacks subject matter jurisdiction and this action is dismissed.

## BACKGROUND

Plaintiffs allege that they contracted with Defendants to provide pharmaceutical products. Am. Compl. at ¶¶ 10-11. Defendants induced Plaintiffs to provide a credit account. *Id.* at ¶¶ 10-13. Defendants allegedly ultimately failed to provide the ordered products and absconded with the amounts credited. Am. Compl. at ¶¶ 14-18. Plaintiffs claim $4,828,062 in damages. *Id.* at ¶ 17. On November 19, 2018, Plaintiffs commenced this action. *See*, Complaint, Dkt. Entry No. 1.

On June 19, 2020, the Court issued an Order to Show Cause why this action should not be dismissed for lack of subject matter jurisdiction as the citizenship of all of the members of Defendant Mainspring was not alleged in either the Complaint or Amended Complaint and directed Mainspring to file an affidavit attesting to the citizenship of each of its members. *See*, Electronic Order dated June 19, 2020. In response, Defendants submitted an affidavit of Vahe Ovasapyan ("Vahe") affirming that, as of the date this lawsuit was commenced, he, a citizen of New York, and Ria Phillips, a citizen of Pennsylvania, were the only two members of Mainspring. Vahe Aff., Dkt. Entry No. 54, at ¶¶ 3-4, 8. Plaintiffs disputed Vahe's citizenship and the Court granted Plaintiffs' request for limited discovery on this issue. *See*, Electronic Order dated July 14, 2020. The Court subsequently ordered briefing on the issue of subject matter jurisdiction based on diversity. *See*, Electronic Order dated March 3, 2021. Plaintiffs contend that Vahe changed his domicile from New York to Pennsylvania. *See*, Pls.' Br. at 8. Defendants contend that Vahe maintained his domicile in New York notwithstanding his move to Pennsylvania. *See*, Defs.' Br. at 1. Despite the Court's clear and repeated directives to the parties in an effort to establish Edvin's citizenship, it remains unclear.

## STANDARD OF REVIEW

"If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). Federal subject matter jurisdiction exists only where the action presents a federal question pursuant to 28 U.S.C. § 1331 or where there is diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See*, *Petway v. N.Y.C. Transit Auth.*, 2010 WL 1438774, at *2 (E.D.N.Y. Apr. 7, 2010), *aff'd*, 450 F. Appx. 66 (2d Cir. 2011).

Diversity jurisdiction exists when all plaintiffs are citizens of states diverse from those of all defendants. *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 117-18 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)). "For purposes of diversity jurisdiction, the relevant domicile is the parties' domicile at the time the complaint was filed." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). The party asserting diversity jurisdiction has the burden to prove it exists by a preponderance of the evidence. *See*, *Pennsylvania Pub. Sch. Employees' Ret. Sys.*, 772 F.3d at 118; *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

The citizenship of a limited liability company is determined by the citizenship of each of its members. *See*, *e.g.*, *Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC*, 692 F.3d 42, 49 (2d Cir. 2012). "An individual's citizenship . . . is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). "Domicile is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id.* (citation and internal quotations omitted). "[R]esidence alone is insufficient to establish domicile." *Van Buskirk*, 935 F.3d at 54. "No single factor is determinative, and courts must consider the totality of the evidence" when analyzing

domicile. *Finnegan v. Long Island Power Auth.*, 409 F. Supp.3d 91, 96 (E.D.N.Y. 2019) (citation and internal quotations omitted). "A court should not rely on self-serving declarations in evaluating where a party was domiciled for the purposes of diversity jurisdiction." *Id.* (citation and internal quotations omitted).

> Factors the Court may consider include:
>
> current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, membership in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes[,] whether a person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears) . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*Id.* (citation omitted). "To effect a change of domicile, two things are indispensable: First, residence in a new domicile; and, second, the intention to remain there. . . . Either without the other is insufficient." *Corio*, 232 F.3d at 42 (citation and internal quotations omitted). Domicile "is presumed to continue in the same place, absent sufficient evidence of a change." *Id.* The party alleging a change of domicile "must prove those facts by clear and convincing evidence." *Id.*

## DISCUSSION

The parties agree that, at the commencement of this lawsuit on November 19, 2018, both Plaintiffs were New York corporations. Defs.' Br. at 4. It also is undisputed that, at the time of the filing of this action, Mainspring's members were comprised of Ria Phillips and Vahe. Vahe Aff. at ¶ 3. The parties do not dispute that Ria Phillips was a citizen of Pennsylvania. Defs.' Br. at 4. The Court is left to determine, for purposes of establishing diversity jurisdiction, the citizenship of non-party Vahe and Defendant Edvin.

I.    **Vahe Ovasapyan**

It is undisputed that Vahe became a citizen of New York after moving from California in 2015. Deposition Transcript of Vahe Ovasapyan dated January 20, 2021 ("Vahe Tr. 1"), Exhibit

4

B to Pls.' Br., Dkt. Entry No. 65-2, at 14:10-15:2. On June 7, 2017, Vahe and his wife signed a lease for an apartment in King of Prussia, Pennsylvania, which terminated on October 29, 2018. Exhibit D to Pls.' Br. ("Pls.' Ex. D"), Dkt. Entry No. 65-4, at 18. On July 30, 2017, Vahe and his wife vacated their apartment in New York and listed the Pennsylvania apartment as their forwarding address. Vahe Tr. 1 at 17:10-18:15; Pls.' Ex. D at 2.

While Vahe and his wife lived in the Pennsylvania apartment, on August 1, 2017, Vahe also leased a one bedroom apartment in Cambria Heights, New York. Pls.' Ex. D at 9-15. Vahe claims he only used the Pennsylvania apartment for purposes of commuting to work at Mainspring's headquarters in Pennsylvania. Vahe Aff. at ¶ 5. Several months before November 2018, Vahe and his wife paid a deposit to purchase a three bedroom condominium, located in King of Prussia, Pennsylvania, which purchase closed on October 26, 2018. Deposition Transcript of Vahe Ovasapyan dated January 28, 2021 ("Vahe Tr. 2"), Exhibit C to Pls.' Br., Dkt. Entry No. 65-3, at 18:23-19:3, 20:13-15; Vahe Aff. at ¶ 6. Vahe and his wife extended their lease on the Pennsylvania apartment through January 2019 until they moved to the Pennsylvania condominium. Vahe Tr. 1 at 43:14-44:7. Vahe does not recall when he stopped maintaining the Cambria Heights apartment, but claims he maintained it when this action commenced. *Id.* at 28:15-18; Vahe Aff. at ¶ 4. Thus, Vahe owned and rented properties in Pennsylvania, and rented a property in New York at the time of filing. However, the acquisition of a more permanent home in Pennsylvania, where Vahe also worked, suggests an intent to become a citizen of Pennsylvania.

The Cambria Heights property appears to have been temporary. The lease listed Vahe as the sole tenant and Vahe admitted that he did not tell his wife about the apartment or bring her there, and he did not tell his family about the apartment. Vahe Tr. 1 at 28:19-29:24, 57:4-58:4; Pls.' Ex. D at 9-15. Vahe did not have a TV or any furniture in the apartment except for an air

5

mattress. Vahe Tr. 1 at 49:5-11, 63:3-25. He could not recall whether he had sheets on the air mattress or whether he slept with anyone on the air mattress. *Id.* at 63:3-64:7. Vahe stayed there with a bag containing a change of clothes but did not have a cabinet or closet to store his clothes. *Id.* at 53:23-54:12. He also was unsure if the apartment had a stove or a microwave. *Id.* at 59:21-22, 60:3-4. In short, Vahe recalled extremely little about the New Cambria apartment, including the layout, whether he entertained friends there, ate, drank alcohol or did drugs there. *Id.* at 30:7-31:2, 54:15-18, 58:5-15, 67:7-15. Based on the evidenced odd collection of activities, it is unclear why Vahe kept the Cambria Heights apartment or what he did while there, if he even spent any time there. The nature of the Cambria Heights apartment and Vahe's recollection of his use of it suggest a transient lifestyle that cuts against maintaining a domicile in New York.

Vahe's filed tax returns also suggest an intent to make Pennsylvania his new domicile. His 2017 federal, California non-resident, and Pennsylvania state tax returns each list the Pennsylvania rental apartment as his primary residence. Pls.' Ex. D at 46, 65, 75. He did not file taxes in 2018, despite claiming to be a managing member and employee of Mainstream during that year. Vahe Tr. 1 at 98:23-24. His 2019 Pennsylvania tax return lists the Pennsylvania condominium as his residence. Pls.' Ex. D at 84.

While Vahe's California non-resident tax return indicates he and his wife were Pennsylvania residents domiciled in New York, this is a self-serving statement inconsistent with the fact that his wife never resided at or even was aware of the Cambria Heights apartment. *Id.* at 70; *Finnegan*, 409 F. Supp.3d at 96. Consistent with his move in 2017 from New York to Pennsylvania, Vahe filed his 2017 Pennsylvania tax return as a "part-year resident," not as a "nonresident." *Id.* at 75. Pennsylvania's Department of Revenue defines a "part-year resident" as "[a] person who either moves into or outside of Pennsylvania with the bona fide intention of

6

acquiring a new domicile . . . for the part of the taxable year that the individual maintains a permanent place of abode within Pennsylvania." Pa. Dept. of Rev., https://revenue-pa.custhelp.com/app/answers/detail/a_id/911/related/1/session/L2F2LzEvdGltZS8xNjI1MTQ2NjIyL3NpZC9mcEIqNVVlcA%3D%3D. He also filed his 2019 Pennsylvania tax return as a Pennsylvania resident. Pls.' Ex. D at 84. Accordingly, this demonstrates an intent to make Pennsylvania his new domicile.

Vahe's identification cards ("ID") also evidence a change of domicile to Pennsylvania. After moving to Pennsylvania, Vahe exchanged his New York driver's license for a Pennsylvania driver's license, which was issued on January 26, 2018. Vahe Tr. 2 at 30:10-18; Pls.' Ex. D at 94. Defendants contend that Vahe's maintenance of his New York City ("NYC") ID and New York State ID supports continued domicile in New York. However, both of those documents were issued in 2015 and, at most, only establish his residence in 2015.[1] Pls.' Ex. D at 88, 97.

In 2018, both Vahe's accountant and dentist were located in California. Vahe Tr. 2 at 43:20-25; Pls.' Ex. D at 45. This information does not support a change of domicile to Pennsylvania. Defendants provided receipts for contacts and glasses obtained from New York providers on March 4, 2017. Receipts, Exhibit C to Defs.' Br., Dkt. Entry No. 66-3. The receipts are unattached to a declaration or affidavit and they only would support a New York domicile in early 2017. Thus, they are irrelevant to the instant inquiry as Vahe leased the Pennsylvania apartment later that same year in June 2017 and the receipts reveal nothing as to his domicile in 2018.

---

[1] While the NYC ID does not list an issuance date, the expiration date is July 20, 2020, and NYC IDs are only valid for five years, suggesting an issuance date in 2015. *See*, ID NYC, https://www1.nyc.gov/site/idnyc/frequently-asked-questions/frequently-asked-questions.page#:~:text=For%20applicants%2010%2D13%20years,the%20IDNYC%20application%20is%20approved.

Defendants provided an undated and unsworn letter of introduction from Nazareth Markarian, the New York Chair of the Armenian National Committee ("NY ANC"), which also is unattached to a declaration or affidavit. Letter, Exhibit B to Defs.' Br., Dkt. Entry No. 66-2. Mr. Markarian states that he has known Vahe for approximately five years and that Vahe has been active with the NY ANC since around 2015. *Id.* Since the letter is undated and unsworn, it is unclear whether Mr. Markarian has known Vahe from 2015 or an earlier time or whether Vahe was an active member in 2018. Therefore, even if the Court were to consider this letter, it does not assist in establishing Vahe's domicile in 2018.

Defendants also submitted fifteen photographs purporting to show Vahe in different locations in New York City from 2017 and 2018 and one event flyer. *See*, Photographs, Exhibit A to Defs.' Br., Dkt. Entry No. 66-1. These were submitted without a declaration or affidavit that would establish they are of Vahe, the locations shown, or the dates taken. Again, even if the Court were to consider these photographs, they are of little value as they only establish Vahe's transient presence at a specific place and time. The event flyer for DJ V-Money, assuming that is Vahe's stage name, does not list a year and, at best, would prove that he performed for one evening at one location in New York. *Id.* at 3. These submissions do not support Vahe's domicile in any state in 2018.

Vahe's testimony further belies an intent to remain domiciled in New York in 2018. He declared in his affidavit that he was a citizen of New York on the date this lawsuit was filed and that he "intended to remain domiciled in New York City." Vahe Aff. at ¶¶ 4, 6. However, Vahe testified that, by "domiciled," he "assume[d] it mean[t] living in New York" or "going back and forth" between New York and Pennsylvania. Vahe Tr. 1 at 56:6-15. He also claimed that he still considers New York City his home since it is where he "maintain[s] [his] social circle and work

as a disc jockey." Vahe Aff. at ¶ 7. When asked about his social circle, he described friends who he met at Soul Cycle, randomly at Chelsea Market, or at "events." Vahe Tr. 1 at 70:22-71:17. Vahe claimed he had "20, 30, 40" friends in New York, but repeatedly refused to provide their names and, ultimately, only named four individuals who he knew "[t]hrough social media." *Id.* at 69:18-76:3. Vahe further claims a connection to New York based on his work as a disc jockey. However, there is no objective proof of this work before the Court beyond Vahe's self-serving statements. *See*, *Finnegan*, 409 F. Supp.3d at 96. Tellingly, Vahe no longer maintains any residence in New York and still resides at the Pennsylvania condominium. Vahe Aff. at ¶ 7. Thus, Vahe's equivocal testimony undermines his affidavit's claims of citizenship in New York.

Considering the totality of the foregoing facts and circumstances, Plaintiffs have proven by clear and convincing evidence that, at the time of filing, Vahe had changed his domicile to Pennsylvania.

## II.  Edvin Ovasapyan

"Allegations of residence are insufficient to establish diversity jurisdiction. It is well-established that when the parties allege residence but not citizenship, the court must dismiss the suit." *Mackason v. Diamond Fin. LLC*, 34 F. Supp.2d 53, 55 (S.D.N.Y. 2004) (quoting *Held v. Held*, 137 F.3d 998, 1000 (7th Cir. 1998)). Residence is not citizenship for diversity purposes. *See*, *Adrian Family Partners I, LP v. ExxonMobil Corp.*, 79 F. Appx. 489, 491 (2d Cir. 2003).

The Amended Complaint only alleges that Edvin is a California resident. Am. Comp. at ¶ 4. When ordering briefing on this issue, the Court advised that "Plaintiffs have yet to set forth the *CITIZENSHIP*, as opposed to residence, of Defendant Edvin Ovasapyan ('Edvin')." Electronic Order dated March 3, 2021 (emphasis in original). The Court reiterated that "Plaintiffs must set forth the citizenship of Defendant Edvin Ovasapyan . . . . Defense counsel's alleged statement that

Defendant Edvin Ovasapyan was not a citizen of New York when this action commenced does not affirmatively set forth his citizenship." Electronic Order dated March 9, 2021.

Plaintiffs submitted a declaration signed by Edvin from a separate lawsuit, attesting that he was a California citizen from April 10, 2019 through July 24, 2020. Edvin Decl., Exhibit E to Pls.' Br., Dkt. Entry No. 65-5, at ¶ 2. This fails to establish Edvin's citizenship on the date the instant action was filed on November 19, 2018. Edvin's criminal prosecution in the Northern District of California equally is unhelpful as citizenship is not a prerequisite to prosecution. Edvin merely asserts through counsel that he was not a New York citizen the day this lawsuit was filed. Defs.' Br. at 4. However, as the Court previously and repeatedly advised the parties over the past year, this is insufficient to affirmatively set forth citizenship. *See*, *Page v. United States Agency for Global Media*, 797 Fed. Appx. 550, 556 (2d Cir. 2019) (federal courts do not have diversity jurisdiction over stateless individuals).

While Defendants correctly point out that Plaintiffs have not alleged Edvin's citizenship, Defendants coyly refrain from alleging Edvin's citizenship notwithstanding this Court's previous order to identify, by affidavit, the citizenship of each of Mainspring's members for the purpose of determining subject matter jurisdiction based on diversity. *See*, Electronic Order dated June 19, 2020; Defs.' Br. at 4. Despite numerous warnings from the Court, Plaintiffs also failed to address Edvin's citizenship by providing only a declaration setting forth his citizenship after this lawsuit was filed. Essentially, Edvin's domicile remains unknown and, as discussed above, federal courts do not have diversity jurisdiction over stateless individuals.

## **CONCLUSION**

For the foregoing reasons, the Court finds that, while Vahe Ovasapyan was a citizen of Pennsylvania on the date this action was commenced, making both members of Mainspring

Distribution LLC citizens of Pennsylvania, Plaintiffs have not sustained their burden of establishing Edvin's citizenship, despite having been given numerous opportunities to do so. As discussed throughout this Memorandum and Order, both parties are to blame for negligently or intentionally impeding the Court's ability to determine subject matter jurisdiction. Accordingly, this action is dismissed, with prejudice, for lack of subject matter jurisdiction.

SO ORDERED.

Dated: Brooklyn, New York
July 13, 2021

/s/
DORA L. IRIZARRY
United States District Judge